UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

JUSTIN R. CORMIER,                                        Case No.: 7:12-CV-1176 [MAD/TWD]

          Plaintiff,

  -against-                                                      COMPLAINT

MARK G. GEBO and
HRABCHAK, GEBO & LANGONE, P.C.,

          Defendants.
_____

      NOW COMES Plaintiff, Justin R. Cormier (hereinafter "Cormier"), by and through undersigned counsel, Tully Rinckey PLLC, as and for his complaint as against Defendants, Mark G. Gebo (hereinafter "Gebo") and Hrabchak, Gebo & Langone, P.C. (hereinafter "HG&L"), states as follows:

*Parties*

     1.    Cormier is an individual resident of Moore County, North Carolina.

     2.    Gebo is an individual resident of Jefferson County, New York.

     3.    HG&L is a domestic professional corporation with its principal place of business in Jefferson County, New York.

*Jurisdiction & Venue*

     4.    This is an action for damages in excess of $75,000.00 and is within the jurisdiction of this Court pursuant to 28 U.S.C. §1332(a)(1).

     5.    Venue appropriately lies in this judicial district pursuant to 28 U.S.C. §1391(a)(2).

*Facts*

6.    At times material hereto, Gebo was licensed to practice law in the State of New York.

7.    At times material hereto, Gebo was a principal shareholder in HG&L, and at all times material hereto Gebo was acting in his professional capacity as an officer and employee of HG&L.

8.    At times material hereto commencing in 2006, Gebo represented Cormier with respect to certain real estate acquisition and financing transactions.

9.    Over the course of the next three (3) years, Gebo acted as counsel for both Cormier and his mortgagees with respect to Cormier's financing of a number of mortgage loan transactions for the development and construction of four residential dwellings on land owned by Cormier in the Village of Chaumont, Town of Lyme, on Jefferson County Route 179.

10.    Cormier was at times material hereto the owner of four parcels of land in the Town of Lyme:

    a.    the first, comprised of Lyme Assessor's Tax Map I.D. Nos. 61.08-1-9.5 and 61.42-2-18.5 (hereinafter "Parcel '1'");

    b.    the second, Nos. 61.08-1-9.1 and 61.42-2-18.61 (hereinafter "Parcel '2A'");

    c.    the third, Nos. 61.08-1-9.6 and 61.42-2-18.62 (hereinafter "Parcel '2B'"); and

    d.    the fourth, Assessor's Tax Map I.D. No. 61.42-2-18.63 (hereinafter "Parcel '2C').

11. Gebo originally represented Cormier in the purchase and financing of Parcel "1" in August, 2006, whereby a purchase money and construction loan mortgage was given to Towne Mortgage Company (hereinafter "TMC"), of Sterling Heights, Michigan, in the amount of $230,000.

12. Gebo also represented TMC in the financing of Parcel "1".

13. In May, 2007, Gebo again undertook to represent Cormier and TMC with respect to a mortgage loan transaction with TMC whereby Cormier was leveraging his equity in Parcel "1" to acquire Parcels "2A", "2B", and "2C", which were then as yet a single undivided parcel (hereinafter "Parcel '2'").

14. Cormier intended that the second TMC mortgage loan proceeds would be used to discharge the first mortgage on Parcel "1", refinance Parcel '1' with a new mortgage, and provide the cash necessary to acquire the adjacent land, Parcel "2".

15. Cormier instructed Gebo to structure the transaction such that the new TMC mortgage would be collateralized solely by Parcel "1".

16. When Gebo drafted the loan documents and mortgage instrument, the mortgage instrument provided that the loan would be cross-collaterized with both Cormier's existing land (Parcel "1"), and the newly-acquired Parcel "2", such that both lots were then encumbered by the new mortgage in the amount of $380,000.

17. In May, 2007, Gebo closed the purchase, sale, and mortgage finance transaction on behalf of TMC and Cormier, and recorded the $380,000 mortgage against the title to both parcels.

18. Gebo did not advise Cormier that Gebo had drafted and recorded the mortgage instrument to encumber both Parcel "1" and Parcel "2".

19. At the time of the May, 2007, closing, Gebo failed to obtain and record a discharge of TMC's August, 2006, mortgage on Parcel "1",

20. In October, 2007, Gebo again undertook to represent both Cormier and TMC with respect to Cormier's refinancing of Parcel "1" for the purposes of releveraging the equity in that parcel to provide construction capital for the development of Parcels "2A", "2B", and "2C", in the amount of $350,000.

21. In October, 2007, Gebo closed the mortgage refinance transaction on behalf of TMC and Cormier, and recorded the $350,000 mortgage against the title to Parcel "1".

22. Subsequent to this transaction, the total debt secured by Parcel "1" was $960,000, insofar as the August, 2006, mortgage remained undischarged.

23. Parcels "2A", "2B", and "2C", which Cormier had directed to remain unencumbered so as to facilitate resale, were each mortgaged in the amount of $380,000 from the May, 2007, transaction.

24. At the time of the October, 2007, closing, Gebo failed to obtain or record a discharge of TMC's August, 2006, mortgage on Parcel "1",

25. In December, 2008, Gebo then undertook to represent Cormier and another prospective mortgagee, Citizens Bank of Cape Vincent (hereinafter "CBCV"), of Cape Vincent, New York, with respect to the financing of a construction loan and mortgage for Parcel "2C" in the amount of $177,000.

26. In December, 2008, Gebo closed the mortgage refinance transaction on behalf of CBCV and Cormier, and recorded the $177,000 mortgage against the title to Parcel "2C".

27. CBCV's December, 2008, mortgage was placed by Gebo on the title to parcel in a second position to the May, 2007, mortgage to TMC.

28. Gebo did not advise Cormier that Parcel "2C" was encumbered by both the May, 2007, and December, 2008, mortgages.

29. In April, 2009, Gebo again represented Cormier and CBCV with respect to the financing of an additional construction loan and mortgage in the amount of $65,000.

30. The April, 2009, CBCV mortgage was to be placed on the titles to Parcels "2B" and "2C".

31. In April, 2009, Gebo closed the mortgage refinance transaction on behalf of CBCV and Cormier, and recorded the $65,000 mortgage against the titles to Parcels "2B" and "2C".

32. The April, 2009, CBCV mortgage was placed by Gebo in a second position to the May, 2007 mortgage to TMC, as against the title to Parcel "2B".

33. Gebo did not advise Cormier that Parcel "2B" was encumbered by both the May, 2007, and April, 2009, mortgages.

34. Gebo did not advise Cormier that Parcel "2C" was encumbered by both the May, 2007, and December, 2008, mortgages, in additional to the April, 2009, mortgage.

35. While recited in the mortgage instrument drafted by Gebo to be subordinate to the December, 2008, CBCV mortgage against Parcel "2C", the April, 2009, CBCV mortgage was actually in a third position to the May, 2007, mortgage to TMC.

36. In September, 2009, Gebo undertook to represent Cormier and CBCV with respect to the financing of a construction loan and mortgage for Parcel "2A" in the amount of $100,000.

37. In September, 2009, Gebo closed the mortgage refinance transaction on behalf of CBCV and Cormier, and recorded the $100,000 mortgage against the title to Parcel "2A".

38. This mortgage was placed in a second position to the May, 2007, mortgage to TMC.

39. Gebo did not advise Cormier that Parcel "2A" was encumbered by both the May, 2007, and September, 2009, mortgages.

## FIRST CAUSE OF ACTION

### Negligence

40. Cormier incorporates and realleges Paragraphs 1 through 39 as if set forth fully herein.

41. Gebo and HG&L had a professional duty to Cormier to competently perform the several closings.

42. Gebo and HG&L breached their duty to Cormier by:

    a. failing to obtain a discharge of the August, 2006, TMC mortgage;

    b. erroneously cross-collateralizing the May, 2007, TMC mortgage;

    c. failing to advise Cormier that the December, 2008, April, 2009, and September, 2009, CBCV mortgages were subordinate to the May, 2007, TMC mortgage.

43. As a direct and proximate result of the negligence of Gebo and HG&L:

    a. Cormier has been unable to obtain any further advances or credit lines for the payment of contractors and materialmen for the development of the subdivision;

    b. Cormier is in default of a contractual obligation for the sale of Parcel "2C"; and

    c. the several mortgages are in default, and Cormier is facing the onerous prospect of mortgage foreclosure and tax lien prosecution;

all to Cormier's general damage.

WHEREFORE, Cormier demands judgment against Gebo and HG&L, jointly and severally, for compensatory damages, interest, and costs of suit.

Cormier demands trial by jury of all issues so triable at law, pursuant to Fed.R.Civ.P. 38.

Cormier also requests any and all such other relief as this Court deems just and meet.

Dated: July 23, 2012
Albany, New York

JUSTIN R. CORMIER

By his attorneys,

_____
Douglas J. Rose, Esq.

Tully Rinckey PLLC
441 New Karner Road
Albany, NY 12205
(518) 218-7100
drose@tullylegal.com