**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JUSTIN R. CORMIER,**

                    **Plaintiff,**

  **vs.**                                               **7:12-CV-1176
                                                                    (MAD/TWD)**

**MARK G. GEBO;
HRABCHAK, GEBO & LANGONE, P.C.,**

                    **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**TULLY RINCKEY PLLC**                 **DOUGLAS J. ROSE, ESQ.**
441 New Karner Road
Albany, New York 12205-3884
Attorneys for Plaintiff

**SMITH, SOVIK, KENDRICK &**        **KEVIN E. HULSLANDER, ESQ.**
**SUGENT, P.C.**                                         **DAVID R. DUFLO, ESQ.**
250 South Clinton Street                  **PHILLIP D. DYSERT, ESQ.**
Suite 600
Syracuse, New York 13202-1252
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff commenced this legal malpractice action on July 23, 2012, alleging that Defendants negligently breached their professional duty to competently perform certain real estate transactions. *See* Dkt. No. 1. Presently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 27. For the reasons stated herein, the Court grants Defendants' motion for summary judgment.

## II. BACKGROUND[1]

Plaintiff Justin R. Cormier is the owner of four parcels of land in the Town of Lyme: (1) a parcel comprised of the Town of Lyme Assessor's Tax Map I.D. Nos. 61.08-1-9.5 and 61.42-2-18.5 ("Parcel 1"); (2) a parcel comprised of the Town of Lyme Assessor's Tax Map I.D. Nos. 61.08-1-9.l and 61.42-2-18.61 ("Parcel 2A"); (3) a parcel comprised of the Town of Lyme Assessor's Tax Map I.D. Nos. 61.08-1-9.6 and 61.42-2-18.62 ("Parcel 2B"); and (4) a parcel comprised of the Town of Lyme Assessor's Tax Map I.D. No. 61.42-2-18.63 ("Parcel 2C"). Dkt. No. 27, Defendants' Statement of Material Facts ("Defs' SOMF") ¶ 10; Dkt. No. 31, Plaintiff's Response to Defendants' Statement of Material Facts ("Plf's SOMF") ¶ 10.

Plaintiff entered into a series of real estate transactions beginning in 2006 and ending in 2009. Defs' SOMF ¶ 11; Plf's SOMF ¶ 11. The details of those transactions are as follows:

> Plaintiff purchased Parcel 1 from Golden Crescent Enterprises on or around August 3, 2006[,] whereby Plaintiff obtained a purchase money and construction loan mortgage from Towne Mortgage Company [("TMC")] in the amount of $230,000 [("August 2006 Transaction")];
>
> In May 2007, Plaintiff obtained mortgage financing from TMC whereby Plaintiff was leveraging his equity in Parcel 1 to acquire Parcel 2A, Parcel 2B, and Parcel 2C, which at the time of the this transaction were a single, undivided parcel of land [("Parcel 2")] from TMC in the amount of $380,000 [("May 2007 Transaction")];
>
> In October 2007, Plaintiff obtained mortgage financing to provide construction capital for the development of Parcel 2A, Parcel 2B, and Parcel 2C from TMC in the amount of $350,000 [("October 2007 Transaction")];
>
> In December 2008, Plaintiff obtained mortgage financing for a construction loan for Parcel 2C from Citizens Bank of Cape Vincent [("CBCV")] in the amount of $177,000 [("December 2008 Transaction")];

---

[1] The following facts are undisputed, or indisputable, unless otherwise noted.

> In April 2009, Plaintiff obtained mortgage financing for an additional construction loan on Parcel 2B and Parcel 2C from CBCV in the amount of $65,000 [("April 2009 Transaction")]; and
>
> In September 2009, Plaintiff obtained mortgage financing for a construction loan for Parcel 2A from CBCV in the amount of $100,000 [("September 2009 Transaction")].

Defs' SOMF ¶ 11; Plf's SOMF ¶ 11.

Plaintiff's father, Richard Cormier, acted as his business partner and attorney-in-fact on each of the foregoing real estate transactions. Defs' SOMF ¶ 12; Plf's SOMF ¶ 12. Defendants delivered correspondence dated December 19, 2008, to Plaintiff's attorney-in-fact, Richard Cormier, regarding the December 2008 Transaction. This correspondence stated that Defendants represented CBCV, and not Plaintiff, in the December 2008 Transaction. The correspondence was signed by Richard Cormier in his individual capacity and as attorney-in-fact for Plaintiff and Plaintiff's wife, Kelly Cormier, acknowledging that they were not being represented by or relying on Defendants or CBCV in regard to the status of title to the mortgaged property in this transaction. Defs' SOMF ¶ 13; Plf's SOMF ¶ 13. Defendants also delivered correspondence dated April 9, 2009, to Plaintiff's attorney-in-fact, Richard Cormier, regarding the April 2009 Transaction. This correspondence also stated with respect to the April 2009 Transaction, that Defendants represented CBCV, and not Plaintiff, in the April 2009 Transaction. The correspondence was signed by Richard Cormier, in his individual capacity and as attorney-in-fact for Plaintiff, and Kelly Cormier, acknowledging that they were not being represented by or relying on Defendants or CBCV in regard to the status of title to the mortgaged property in this transaction. Defs' SOMF ¶ 14; Plf's SOMF ¶ 14. Finally, Defendants delivered correspondence dated September 4, 2009, to Plaintiff's attorney-in-fact regarding the September 2009 Transaction. This correspondence stated that Defendants represented CBCV, and not Plaintiff, in the

September 2009 Transaction. The correspondence was signed by Richard Cormier, as Plaintiff's attorney-in-fact, acknowledging that Plaintiff was not being represented by or relying on Defendants or CBCV in regard to the status of title to the mortgaged property in this transaction. Defs' SOMF ¶ 15; Plf's SOMF ¶ 15.

There is no dispute that Defendants represented Plaintiff in the August 2006 Transaction. Defs' SOMF ¶ 12 (duplicate); Plf's SOMF ¶ 12 (duplicate). Nor is there any dispute that no retainer agreement existed between Plaintiff and Defendants with respect to the each of the subsequent transactions. Defs' SOMF ¶ 16; Plf's SOMF ¶ 16. The parties agree that Plaintiff was not represented by Defendants in the December 2008, April 2009, and September 2009 Transactions. Defs' SOMF ¶ 16; Plf's SOMF ¶ 16.

It is also undisputed that Plaintiff was on active duty as a commissioned officer with the United States Army at all times relevant to this matter. Dkt. No. 30, Plaintiff's Affidavit in Opposition to Motion for Summary Judgment ("Plf's Aff.") ¶ 29; *id.*, Exh. A.

According to Plaintiff, after Defendant Gebo represented him and TMC in the August 2006 Transaction, Plf's Aff. ¶¶ 6-7, "Gebo again undertook to represent me and TMC" in the May 2007 Transaction:

> I intended that the second TMC mortgage loan proceeds would be used to discharge the first mortgage on Parcel 1, refinance Parcel 1 with a new mortgage, and provide the cash necessary to acquire the adjacent land, Parcel 2.
>
> I instructed Gebo to structure the transaction such that the new TMC mortgage would be collateralized solely by Parcel 1.
>
> When Gebo reviewed the loan documents and mortgage instrument, the mortgage instrument provided that the loan would be cross-collateralized with both my existing land (Parcel 1) and the newly-acquired Parcel 2, such that both lots were then encumbered by the new mortgage in the amount of $380,000.

4

> In May, 2007, Gebo closed the purchase, sale, and mortgage finance transaction on behalf of me and TMC, and recorded the $380,000 mortgage against the title to both parcels.
>
> Gebo did not advise me that I had executed the mortgage instrument to encumber both Parcel 1 and Parcel 2.
>
> At the time of the [May 2007 Transaction,] Gebo negotiated for me the purchase of an owner's policy of title insurance.
>
> At the time of the [May 2007 Transaction,] Gebo reviewed on my behalf the deed to Parcel 2 from the seller.
>
> I paid HG&L a fee of $465 to represent me in the [May 2007 Transaction].

*Id.* ¶¶ 8-18.

Plaintiff further asserts that "Gebo again undertook to represent both me and TMC" in the October 2007 Transaction:

> In October, 2007, Gebo closed the mortgage refinance transaction on behalf of me and TMC, and recorded the $350,000 mortgage against the title to Parcel 1.
>
> I paid HG&L a fee of $465.00 to represent me in the [October 2007 Transaction].
>
> At the time of the [October 2007 Transaction,] Gebo failed to obtain or record a discharge of TMC's August, 2006, mortgage on Parcel 1, and also failed to obtain or record a discharge of TMC's May, 2007, mortgage on Parcel 1 and Parcel 2.
>
> Subsequent to the [October 2007 Transaction,] the total debt secured by Parcel 1 was $960,000, insofar as both the August, 2006, mortgage and the May, 2007, mortgage remained undischarged.
>
> Parcels 2A, 2B, and 2C, which I had directed to remain unencumbered so as to facilitate resale, were each mortgaged in the amount of $380,000 from the [May 2007 Transaction].
>
> Gebo did not advise me that Parcel 1 and Parcel 2 were encumbered by the May, 2007, mortgage.

5

> Gebo did not advise me that Parcel 1 was encumbered by both the
> April, 2006, and the May, 2007, mortgages in addition to the
> October, 2007, mortgage.

*Id.* ¶¶ 20-25.

According to Defendant Gebo, Defendants' legal representation of Plaintiff ended at the closing of the August 2006 Transaction. Gebo asserts that Defendants did not represent Plaintiff in any of the other mortgage finance transactions at issue here. Dkt. No. 27-8, Affidavit of Mark G. Gebo, Esq. in support of Defendants' Motion for Summary Judgment ("Gebo Aff.") ¶ 4. With respect to the May 2007 and October 2007 Transactions, Gebo claims that Defendants

> acted as the settlement agent and merely oversaw the mortgage
> closing for the refinance transactions that occurred in May 2007 and
> October 2007. Typically, a settlement agent oversees the mortgage
> closing and assists in the calculation of fees to be paid by a
> borrower on a mortgage finance transaction. Additionally, among
> other things, the settlement agent may calculate all closing costs
> incurred for a mortgage finance transaction, may prepare the
> settlement statement to be executed at the closing of the mortgage
> loan, and oversees the payment of all fees, including the settlement
> agent's fees, and closing costs that must be paid, typically out of the
> proceeds of the mortgage. Settlement agents rarely are retained by
> a borrower in a mortgage finance transaction and do not represent
> the borrowers at the loan closing. For each of the May 2007 and
> October 2007 mortgage finance transactions, TMC calculated the
> fees and prepared the settlement statement. My only role in each of
> the May 2007 and October 2007 transactions was to oversee the
> execution of the each [sic] closing. Additionally, at each of the
> May 2007 and October 2007 mortgage finance transactions, I acted
> solely as settlement agent, did not did not represent Plaintiff in each
> of the mortgage finance transactions, and advised Plaintiff's
> attorney-in-fact Richard Cormier to obtain his own counsel.
>
> . . .
>
> Defendants did not represent Plaintiff or TMC in the May 2007 and
> October 2007 mortgage finance transactions. Defendants were paid
> for their services as the settlement agent out of the proceeds of the
> loan. Since all fees and expenses for the mortgage finance
> transaction are typically paid out of the loan proceeds by the
> borrower, it is customary practice for the settlement agent to

6

>   include the fees for their services with the other closing costs to be
>   paid out of the loan proceeds.

*Id.* ¶¶ 7, 9.

Plaintiff commenced this action on July 23, 2013, *see* Dkt. No. 1, and filed affidavits of service for the Summons and Complaint on September 5, 2012, *see* Dkt. Nos. 4, 5. Defendants answered on October 17, 2012, *see* Dkt. No. 8, and filed the instant motion to dismiss on December 5, 2013, *see* Dkt. No. 27. Defendants seek summary judgment on two grounds: (1) "no attorney client-relationship existed between Plaintiff and Defendant[s] for the May 2007, October 2007, December 2008, April 2009, and September 2009 mortgage finance transactions"; and (2) "Plaintiff's claims for legal malpractice pertaining to the August 2006, May 2007, October 2007, December 2008, and April 2009 [Transactions] are time-barred because Plaintiff failed to file the Summons and Complaint in this action within the three year statute of limitations period pursuant to New York Civil Practice Law and Rules section 214(6)." Dkt. No. 27-12 at 5.

### III. DISCUSSION

**A.     Summary Judgment Standard**

A court may grant a motion for summary judgment only if it "determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the

7

court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     Existence of Attorney-Client Relationship**

"Under New York law, which applies here, there are four elements to a legal malpractice claim (1) 'the existence of an attorney-client relationship'; (2) 'negligence on the part of the attorney or some other conduct in breach of that relationship'; (3) 'proof that the attorney's conduct was the proximate cause of injury to the plaintiff'; and (4) 'proof that but for the alleged malpractice the plaintiff would have been successful in the underlying action.'" *Grosso v. Biaggi*, No. 12–CV–6118, 2013 WL 3743482, *3 (S.D.N.Y. July 17, 2013) (internal citation omitted) (quoting *Hanlin v. Mitchelson*, 794 F.2d 834, 838 (2d Cir. 1986)). "For a defendant in a legal malpractice case to succeed on a motion for summary judgment, evidence must be presented in admissible form establishing that the plaintiff is unable to prove at least one of [the] essential elements of a malpractice cause of action." *Ippolito v. McCormack, Damiani, Lowe & Mellon*, 265 A.D.2d 303, 303 (2d Dept. 1999).

"It is well established that, with respect to attorney malpractice, absent fraud, collusion, malicious acts, or other special circumstances, an attorney is not liable to third parties, not in

8

privity, for harm caused by professional negligence." *Rovello v. Klein*, 304 A.D.2d 638, 638 (2d Dept. 2003) (citations omitted); *see also Ginsburg Dev. Cos., LLC v. Carbone*, 85 A.D.3d 1110, 1111–12 (2d Dept. 2011); *Hansen v. Caffry*, 280 A.D.2d 704, 705 (3d Dept. 2001). "In determining the existence of an attorney-client relationship, a court must look to the actions of the parties to ascertain the existence of such a relationship. The unilateral belief of a plaintiff alone does not confer upon him or her the status of a client. Rather, an attorney-client relationship is established where there is an explicit undertaking to perform a specific task." *Wei Cheng Chang v. Pi*, 288 A.D.2d 378, 380 (2d Dept. 2001) (internal citations omitted); *see also Hansen*, 280 A.D.2d at 705. "While the payment of a fee or existence of a formal retainer agreement may be indicators of an attorney-client relationship, such factors are not dispositive." *Droz v. Karl*, 736 F. Supp. 2d 520, 524-25 (N.D.N.Y. 2010) (citing *Moran v. Hurst*, 32 AD3d 909, 911 (2d Dept. 2006)).

Defendants argue that they are entitled to summary judgment because "the undisputed evidence in the record establishes that no attorney-client relationship existed between Plaintiff and the Defendants for the May 2007, October 2007, December 2008, April 2009, and September 2009 mortgage finance transactions." Dkt. No. 27-12 at 8. Plaintiff has admitted that no attorney-client relationship existed for the December 2008, April 2009, and September 2009 Transactions. As such, Defendants are entitled to summary judgment as to those transactions.

The parties do not dispute that Defendants represented Plaintiff at the August 2006 Transaction. Nor do they dispute that there is no retainer agreement between them for the May 2007 and October 2007 Transactions. Defendants assert that Gebo's representation of Plaintiff concluded at the closing of the August 2006 Transaction and that Gebo acted as the settlement agent for the May 2007 and October 2007 Transactions. Defendants also assert, and Plaintiff

9

does not dispute, that Gebo advised Richard Cormier, Plaintiff's attorney-in-fact to obtain independent counsel with respect to the May 2007 and October 2007 Transactions.

In opposition to Defendants' motion for summary judgment, Plaintiff contends that Defendants acted as counsel for both him and his mortgagees in the May 2007 and October 2007 Transactions; that he gave Gebo instructions concerning the collateralization of Parcel 1; that Gebo reviewed the deed for Parcel 2 on behalf of Plaintiff; that Gebo closed the deals on Plaintiff's behalf; and that Plaintiff paid HG&L for Gebo's work. Plaintiff argues, in conclusory fashion, that since it is undisputed that Defendants represented him in the August 2006 Transaction, and their "role as counsel was virtually identical" in the May and October 2007 Transactions, "there clearly existed an attorney-client relationship between the parties at the time." Dkt. No. 30-1 at 7. Other than his own affidavit in opposition to the instant motion for summary judgment, however, Plaintiff has adduced no evidence to support his contention that Defendants represented him at the May 2007 and October 2007 Transactions. Nor has Plaintiff proffered any evidence or interposed any argument to counter Defendants' assertion that the payments they received for their services in the May 2007 and October 2007 Transactions were fees paid to them as the settlement agent for the transactions out of the loan proceeds, as is customary. For instance, Plaintiff has not proffered independent evidence of a fee arrangement or fee payment, a retainer agreement, or a writing indicating Defendants' assent to their representation of both Plaintiff and his mortgagees. Plaintiff does not even claim that there was an oral conversation in which Defendants undertook representation, nor does he dispute that his attorney-in-fact was advised to obtain counsel. As noted above, the unilateral belief of Plaintiff that he was Defendants' client does not by itself confer that status upon him. *See Rechberger v. Scolaro, Shulman, Cohen, Fetter & Burstein, P.C.*, 45 A.D.2d 1453, 1453 (4th Dept. 2007).

Although the Court is mindful that, on a motion for summary judgment, it is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of plaintiff, *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003), it is also true that conclusory, self-serving affidavits that are unsupported by any factual detail are insufficient to give rise to a dispute of material fact. *See Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("The conclusory allegations in Mr. Zappia's affidavit are not sufficient to create a material issue of fact."); *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996) ("Factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.")*; Belcher v. Serriano*, No. 95–CV–1340, 1998 WL 173169, *1 (N.D.N.Y. Apr. 9, 1998) (holding that the plaintiff's complaint and an affidavit submitted in opposition to the defendants' motion for summary judgment were "[in]sufficient to overcome summary judgment," particularly where "his affidavit contains no factual support"); *see also Robert v. Dep't of Justice*, No. 05–CV–2543, 2005 WL 3371480, *8 (E.D.N.Y. Dec. 12, 2005) (finding, on a motion for summary judgment, that the "[p]laintiff's conclusory statement" that he "timely appealed all three decisions . . . fails to rebut [the d]efendants' competent evidence showing an absence of genuine issue of fact that [he] has not administratively exhausted the . . . requests"); *United Magazine Co. v. Murdoch Magazines Distrib.*, 393 F. Supp. 2d 199, 211 (S.D.N.Y. 2005) ("a self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment").

Plaintiff has not provided any evidence, aside from his affidavit in opposition to the instant motion for summary judgment, to rebut Defendants' claim that there was no attorney-client relationship between the parties at the May and October 2007 Transactions. In the absence of any such proof, Plaintiff has failed to create a genuine issue of material fact and Defendants are

entitled to summary judgment. Accordingly, this aspect of Defendants' motion for summary judgment is granted.

## C. Statute of Limitations

Defendants also argue they are entitled to summary judgment on statute of limitations grounds. Dkt. No. 27-12 at 10-12. In response, Plaintiff asserts that, as an active member of the armed services, the statute of limitations has been tolled pursuant to the Servicemembers Civil Relief Act of 2003, 50 U.S.C. App. § 526.[2] Dkt. No. 30-1 at 5-6.

While the Court has found that Defendants are entitled to summary judgment on the merits of Plaintiff's legal malpractice claim, Defendants are not so entitled to that relief on statute of limitations grounds. Defendants do not dispute that Plaintiff was a member of the Armed Forces serving on active duty. Notably, Defendants do not even address Plaintiff's tolling argument in their reply. As such, the statute of limitations for Plaintiff's legal malpractice claim was, and continues to be, tolled during his military service pursuant to 50 U.S.C. App. § 526. *See also* N.Y. Military Law § 308[3]; *Murray v. Watertown Cardiology, P.C.*, No. 7:07-CV-748, 2007

---

[2] This statute provides:

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

50 U.S.C. App. § 526(a).

[3] This statute provides:

> The period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation or order for the bringing of any action or proceeding in any court,

(continued...)

WL 4298524, *2 (N.D.N.Y. Dec. 5, 2007) ("Pursuant to N.Y. Mil. Law § 308, the statute of limitations is tolled during that period of time Plaintiff was in military service.").

Accordingly, Defendants' motion for summary judgment on statute of limitations grounds is denied.

### IV.  CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 27) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  September 24, 2014
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3](...continued)
> board, bureau, commission, department or other agency of government of this state or any of its governmental subdivisions by or against any person in military service, or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such an action or proceeding shall have accrued prior to or during the period of such service, nor shall any part of such period which occurs after the date of enactment of this act be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax or assessment.

N.Y. Mil. Law § 308.